Our first case today is Carol Vorchheimer v. The Philadelphia Owners Association. Mr. Lurie? Thank you, Mr. Lurie. On behalf of the appellant, Carol Vorchheimer, I'd like to reserve five minutes for rebuttal, if I could. That's fine. This is a case for disability discrimination in housing under the FHAA. The plaintiff, appellant Carol Vorchheimer, suffers from pulmonary hypertension, among other conditions. She can't stand for even short periods of time, so she requires the use of a walker. She lived at the Philadelphian, which is a condominium in Philadelphia, and wished to use her rolling walker to get from her condominium unit to the lobby. We're familiar with the facts, Counselor. Yes, we are. So, in granting the defendant's motion to dismiss, our contention is that the district court did not give the allegations in the St. Vorchheimer's amended complaint their due defense. Instead, the district court focused on the availability and efficacy of the Philadelphian's proposed alternative accommodations. And this was clearly error, because the district court was required to construe the allegations of the amended complaint in a way that was favorable to her, the plaintiff, and not the Philadelphia defendant. So, you don't have any dispute that the items that are attached to the complaint are properly included in how the court construes the complaint? No, Your Honor. Our contention is that you can't take apart, you can't essentially withhold a trial of the merits by word-slicing the amended letter that we attached to the complaint. Everything in the complaint has to be construed in the most favorable way to the plaintiff. Right, but even if you do so, none of the letters say it is a necessity that she keep her walker in the lobby. They say it's a necessity she have the walker. It's preferable that she keep it in the lobby, one of them says. That's not saying it's necessary to keep it in the lobby. There are other ways that that can be worked. Yes, and that actually goes to the point of our argument, is the necessity is to get access to the walker, and that's undisputed. Counselor, I see in the letters, if I look at the March 14th letter, the use of the rolling walker is a medical necessity. We also see from that letter that minimizing the period of unsupported standing is important. Let's grant that that's a necessity. But doctors get to opine on medical facts. They don't get to dictate legal conclusions. So they need to offer alternatives that allow more use of a rolling walker and minimize periods of unsupported standing. When I turn to the Philadelphians' letter that was appended to your complaint, their letter on May 24th, they've offered at least four, maybe five accommodations as I read them. She could phone ahead and have the walker ready as soon as she gets to the desk. She could phone ahead and have it ready immediately when she exits the car. They could have a staff member deliver it to the car. It could be loaded and unloaded into the trunk, none of which involves unsupported standing for any period of time. And there's the valet parking option where the walker would be right there. So all of those avoid unsupported standing and allow for use of a walker. And one of them, the valet parking option, also allows for complete independent access, which is the whole gist of your brief. So the doctors get to tell us what's medically necessary, but we decide what's legally necessary. Why is it that all of those options, especially the valet parking option, just suffice under any reading of what the doctors have said in their letter? Because for two reasons. One, it's a motion to dismiss. And two, under those circumstances, even on self-judgment, would it be permissible for the court to consider the alternatives? Because the necessity of the requested accommodation is not measured by the universal possible alternatives. Why not? Because that's what the DOJ and the HUD joint statement says, and that's what three district courts citing that joint statement have said. Okay. The DOJ letter, this is not a reg. It hasn't gone through notice and comment. It doesn't get Chevron deference. It gets Skidmore deference. Correct. I don't see anything in there that parses the statute. So I don't see why you should defer to it. Well, I would submit that you ought to because it's the most on-point authority that there is. And I respectfully submit that this court should do as the district court in Cumberland, and some of the other states in the district of Oregon did just as recently as 2017. And that's on page 18 of our principle brief where the court said, defendants would have this court hold that a requested accommodation is necessary under the FHAA only if there is no other accommodation that would impose a lighter burden on the housing provider. That is not the law. Show me what in the HUD statement is actually parsing the word necessary properly. That does not. It doesn't parse the word necessary. No. Then we don't have to defer to it. There's no reason for us to defer to it on the meaning of necessary if it's not parsing the statutory word necessary. All I'm saying, Your Honor, is that the district of Oregon interpreted that statute on both grounds of reasonableness and necessity. Okay, but the dismissal here is on grounds of necessity, not on reasonable accommodation. That is true. And the opinion from the district of Oregon in CUNY uses that same selection, that same snippet from the joint statement, and applied it to the issue of necessity specifically. So there is authority on that. Now, obviously, that's another district court, and obviously not the Third Circuit, and obviously not the Third Circuit. Counsel, you emphasized that this was a motion to dismiss. Yes. And you also indicated, I think, that it should go through summary judgment, that you want a trial on the merits here. Sure. I found it odd you didn't amend your complaint. The judge did give you an opportunity to amend, and the amendment that you made was – I didn't see anything really new. If we send this back down, what are the facts? Who are the people you're going to depose? What are the documents you're going to discover? What do you intend to do that would provide us a more fulsome record than the record that we're looking at now? Well, for one, we would submit a full litigation-quality expert report from the pulmonologist and possibly other physicians. We would also get discovery from the defendants, which we believe will go straight to that faith and the issue of punitive damages. All right. So you want more medical evidence about her disability, which is already conceded, and you want factual discovery to help you with punitive damages. Yeah. Anything else? Also, to remove any belief that the defendants are going to try to make about her disabilities. I think one of the things we need to get flushed out. I think we all agree we're not there. As Judge Beavis just said, we're focused on the issue of necessity here. I'll check with opposing counsel, but I think they have to concede that they can't prevail on the reasonableness issue. Do you understand that that's in dispute or the reasonableness issue? Well, I thought we were just here for necessity. That's right. I think that's right. So to get back to my colleague's questions, we have to determine what legal necessity is, right? Correct. And I guess your argument is that if the plaintiff's preferred accommodation, you're saying the plaintiff's preferred accommodation always equals a necessary accommodation? No, not always. I mean, they can certainly challenge necessity later on if they want. I mean, there's different points during the litigation that get challenged at. Well, I think it's been challenged here. Yeah. And none of the cases dismiss. I have no case that dismisses a claim on its right to be motioned on necessity. Right, right. But that's why I asked my question. If your answer was, well, we want to take the deposition of some fact witnesses who would illuminate whether the valet option is, you know, I guess another way to put it is, if there are other options that don't put her in any pain because of standing, then how can it be that her preferred option is, quote, necessary? Well, I think we go back to the point of the joint statement and the other. What if we decide that that's not worthy of much deference? Do you have anything else? Or does your case rise or fall on the amount of deference we choose to give to the joint statement? I think three things. I think three things. One, there's the standard for motion to dismiss. And I think that if you look at the amendment, the complaint contains more than sufficient factual allegations of necessity. So that's one. Two, I think it's impermissible at any stage of the litigation to consider the alternatives. And I submit that under the authority of the joint statement and those other cases. Okay. So to accept your holding, we have to say not only that this is not amenable to motion to dismiss, you have to say it's not amenable to summary judgment. Not, not. I didn't feel I could lose this case on summary judgment. How could you lose it based on the availability of alternatives? You are saying every time there's an alternatives issue, it has to go to a jury. Your theory necessarily requires that. No. What I'm saying is that the issue of necessity isn't decided based on the availability of alternatives. Okay. So if what they raise by the time of summary judgment is there are six alternatives here, you say you can never have summary judgment based on necessity and alternatives. If it's just an alternatives base, it has to go to trial, to a jury. Yes. And actually, one of the cases, again, I'm going to save the poems or a tune that I cited in my paper, is actually there in summary judgment to the plaintiff on necessity at that stage. My concern is this. First of all, I think the district court opinions are confused about what the word maybe necessary means. I don't give weight to those district court opinions. When I look at the word necessary, I see that your doctors, the most that they will say is it would be preferable if she had this alternative that was independent access. Right? Preferable is a lot lower than necessary. But let's even say independent access is required. The second problem you've got is that the valet parking option gives her complete independent access and completely satisfies everything the doctors even prefer in their letters. So if necessity has independent legal content, you lose either because necessary has to mean more than preferable. That's the ordinary meaning. Or because she's already gotten one alternative that indisputably gives her the independent access that the doctors would like. What's your response to that? Why doesn't necessary mean that we can consider alternatives in light of that? Is there anything in discovery that's going to undermine anything I've just said or suggest that it's not independent access or she's going to have to stand at any of these places? Well, I think this actually leads me to my third reason why the case should not have been dismissed. Because the independent complaint actually contained specific factual obligations that the alternatives had in fact failed. So I don't understand. You certainly did that with respect to the lobby alternative. Yes. But I didn't see anything in there that the valet option had failed or the call ahead option had failed. I felt those were things she hadn't elected to pursue. Yes. I think that's right. At least as far as the valet, I think the call option is probably mushed together with the concierge issue. Yes. Because if the guy doesn't answer the phone. Or if he's telling somebody else or he's telling somebody else with a rubber jerk or what have you. But I think if this court is inclined to disagree with the joint statement and he and the others, then I suppose that would be the first time. It would certainly be the first time that any court to my knowledge has gone that way on that issue. There's no circuit law. That's correct. That's correct. So I'm just asking this panel to adopt, to stay parallel, consistent with the existing authority rather than go the other way. If I could just one last thing. We'll hear you on rebuttal. Thank you.  Mr. Kersey? Kersey. Kersey. I'm sorry. Good morning. My name is Chris Kersey. I represent the Condominium Association as well as Frank Bonham and June Idsel who are present here today. They are individually named defendants. Frank is the property manager at the building, has been for seven years. June has lived there for many years. She's been on the board for about ten years, was president at the time of this. And as you saw, they were the ones corresponding with Mrs. Vorcheimer regarding her request. Counsel, there are eight cases where the motion to dismiss was granted. It appears like these are all summary judgment cases. That's all I found as well, John. So aren't you asking us to go out on a limb here to affirm Rule 12 dismissal? I don't believe I'm asking the court to go out on a limb. Obviously, as Judge Bibas said, given that many of these cases and pretty much all of them slated in our briefs were decided on summary judgment, the court can decide these things without a trial.  Would might discovery suggest that there are some unforeseen problems with trying to valet park or calling ahead or problems with people waiting? I mean, does she get pulmonary thrombosis for having to sit there a while waiting for the walker? I mean, we don't have a record to tell us any of that. I think you're correct. We don't have a full record on all of those facts. However, what we do have are now four doctor's notes, three of which say the walker in the lobby is just preferable. So I don't know how Dr. Polevsky or any other doctor could change that opinion. And we don't know actually what the basis is for that opinion. If Dr. Polevsky said, well, this is preferable because there's other options. We have to accept it at this point. There's also medical opinion to support the notion that she suffers when she has to stand there and wait for someone to retrieve the walker. And I recall three or four, they pleaded that on at least three occasions the walker was not readily available for her. That is alleged. That's correct. So that accommodation that was proffered by your client can't be a reasonable accommodation or a successful accommodation to rebut their argument that it's necessary that the walker be immediately available. Well, I think what your honor is doing is looking at the next step, the reasonableness step. No, well, I shouldn't use the word reasonable, I guess. But we're not unreasonable. Let's nail that down, right? That's correct. You conceded that. We're just dealing with necessity here. Well, yes, I would say that we conceded that. And she pleaded that it's necessary to have the walker right there. When she gets out of her car, uses her cane, gets in the lobby, the walker needs to be right there. Right. That's correct. And I don't know how you could argue that it's an answer that, well, no, she doesn't really need it to be there. It can be in the back room because we have someone at the desk and the person at the desk will retrieve it for her, etc., etc. That's a loser for you, isn't it? No, I think the pleading is that she can't stand and wait for the walker. Right. That's the pleading. She can't stand. And your client has caused her to have to do that. The combination that we're familiar with, putting the walker in the room, off the lobby, has caused her physical pain, right? Well, that's the allegation, yes. Which we accept. Right. It's a motion to dismiss, right? That's correct. I mean, the more you argue with the facts, the more you're telling me that we should send this back, that we need a full hearing of the facts and then a summary judgment briefing. Well, her allegation... Why is this factual record all we need? Because, frankly, I think we have all the facts. The correspondence among the parties is there. So his claim that, well, it's their bad faith... So shouldn't this have been converted to a Rule 56, then? If you've got a whole bunch of facts, in some points they're in disagreement, it seems like a perfect opportunity to, if there's nothing more, if discovery won't yield anything more, then you convert it to a Rule 56. But the district court didn't give notice that it was doing anything like that. That's correct. So that would be a problem for you, then, if this is properly understood as summary judgment, but the party wasn't put on notice that it's summary judgment. Well, given that everything was amended attached to the complaint as an exhibit, which we don't typically have in federal pleading... Well, that's the other way to hear it. If they just pleaded it was necessary for her to have the walker right there, and they didn't append a bunch of things to the complaint, there's no way you can win on Rule 12, right? Well, no, I would respectfully disagree with that. Well, how? You have to plead facts to show that you're entitled to a cause of action, not just conclusory allegations. Well, I think that facts should be something along the lines of, I need the walker in the lobby because, in the past, when they've removed the walker from the lobby, they've required me to stand there for extended periods of time that have caused me great physical pain and put me in danger of breathing problems, et cetera. That's correct. Then that case flies right by the Rule 12 stage, right? What complicates matters is there are all these evidence, these documents attached, where the plaintiff has put before the district court that there are other alternatives, some of which might make her preferred accommodation not necessary. I think that's a fair statement that there are more facts fled in this complaint than you would typically find. I think, while Your Honor considers some of these hypotheticals, fundamentally, we have to look at the facts that are pled and the exhibits that are attached there, too. And to go to Judge Bevis' point, when this doctor says repeatedly, this is preferable, this is preferable, and it's not necessary, how does that make it, how does that get mine? My concern, though, is that what the DOJ HUD statement is flagging is that maybe this is a complicated question, maybe it's hard for building managers to understand what medically someone needs. It's awkward for us to just cut this off so quickly here without making sure the other side's had an opportunity to do some discovery, bring in some medical experts to tell us about what kind of people, injuries people suffer from not having walkers right at the ready. Well, if I may contrast Dr. Polanski's notes with the notes in the Coon case that counsel cited, which was the District of Oregon case in 2017, I think it's useful, that holding, to see exactly what the doctors in that case wrote, because the difference is stark. If you give me just a moment. This is the doctor's note in the Coon matter. And this was a woman, the plaintiff was 34 years old, had numerous disabilities, had the IQ of a two-and-a-half-year-old. She was nonverbal, unable to bathe or groom herself, and had severe bowel and bladder incontinence. So her parents, they lived in a homeowner's association, bought a big RV motorhome that had a bathroom and a shower and a bed for her to lay on. And what their doctor said was it's necessary for them to have a bathroom and a shower nearby because she can't control her bowels, and then she has abstinence, and the shower needs to be there to clean her. And this is the doctor's note. It is my medical opinion that, due to her medical condition, Ms. Coon requires a transport vehicle that allows her to be in close proximity to a toilet at all times. Additionally, the potential for accidents necessitates access to a shower. For these reasons, I believe that a motorhome that is fully equipped with a separate toilet and shower is medically necessary to allow Ms. Coon to travel and have access to her community and medical providers. And she goes on and uses those words. So you're saying as long as the doctor says it's medically necessary, the court must hold that it's legally necessary? For 12b-6 pleading standards, I would say yes. So if a doctor says it's necessary that my client be moved from the basement apartment to the penthouse suite so that he can have sufficient air and light, you're conceding that the court has to hold that that's legally necessary? For 12b-6, for purposes of pleading, I would say yes. I think they're one and the same. I do not see how doctors get to determine. Doctors give us information. We then apply the legal standard. And I think Judge Hardiman's hypo shows what's so dangerous about handing this over to, did the doctor use the magic word of necessary or not? I mean, in fact, your own hypo suggests doctors use this language like, it is my medical opinion that. And if we start parsing it as if it were a lawyer writing it, oh, opinion. But we have to be able to apply some scrutiny, but how are we going to do that without some factual record to figure out whether it meets a legal standard? It can't be the magic word necessary showing up in the letter, or else every future plaintiff is just going to put the word necessary in there and then say I deserve the penthouse. And the converse is true. If the doctor only says it's preferable, that doesn't preclude the plaintiff from pleading as a matter of law that it's necessary. I guess that's why you answered my question. Well, and I think what happens is here we are, where that's a conclusory allegation of an element of the cause of action. But the facts are what the doctor has opined. And I think that opinion is a fact in the case, that a doctor has opined what's necessary versus what's preferable. And for her, what was necessary, it started that she needed the walker all the time, and then it sort of moved into, well, she just needs to not be standing. Can a layperson establish necessity? Are you saying that only an expert can establish necessity? I don't know the answer, Your Honor. I would have to think. I don't either. I mean, I don't know why a plaintiff couldn't say, look, here's my life and here are my struggles, and I need something, I need thus and such. I need an elevator. I can't walk the stairs, et cetera. It would help, obviously, if you have a doctor supporting that lay testimony. But I would think that lay testimony would be part of the mix. Well, and that's correct. And to the extent that the DOJ joint statement matters, they would say that any layperson can offer their reasons. You don't necessarily have to have a doctor's note in every circumstance, but you do need a doctor's note. And someone like the Association is entitled to a doctor's note to confirm a disability and confirm those things. So how ñ neither of you is offering us a clear definition of the word necessary. I think maybe your adversary would say we should just take whatever DOJ or HUD says about it. But how do you read the word necessary? And what source of law do you draw it from? When you look at the precedent, you have a couple decisions that say what's not necessary. So you have rapid law, which says you can't say if it doesn't ameliorate. You can't turn that into, therefore, anything that ameliorates is necessary. You're right on that. Okay, but what more does it mean? I don't know that it means ñ I think it means necessary. As silly as it sounds, necessary means it's necessary. And when you have a doctor who says here's what's necessary and here's what's preferred, then the statute is not clear. It's necessary, what, to the equal opportunity of enjoyment? I mean, it's not maybe reasonably necessary for equal use and enjoyment. This is not necessary that the person stay alive. This is a broader necessary for a broader set of things. So how do we figure that out? And I guess the question you're asking, Your Honor, is in sort of a broader sense, we're trying to construct the definition of necessary to cover everything. But in the 3604, what, 3B, may be necessary to afford such person equal opportunity to use and enjoy dwelling. How do we figure out what's necessary for that? Well, it may be that it has to be done on a case-by-case basis. I don't know that a broad, overarching definition of necessary can be crafted to cover every possible scenario. And I think on this case, where you have a woman whose medical need is the use of a walker, and that she can't stand and wait, and whose own doctor says, well, she doesn't need to leave it sitting in the lobby unattended in order to meet that need, then that's not necessary. It's a 12B-6. Has she bred facts to show that leaving the walker sitting unattended in the lobby is necessary when her own doctor says, no, it isn't? So on these facts, on this case, I think we can define the word necessary to mean not preferable. It means necessary on this case, in these facts. Okay, thank you, Mr. Coochie. Thank you. Mr. Lurie? Thank you, Your Honor. Could you start with Judge Beavis' question, can you help us define necessary? Yes. As I understand opposing counsel's argument, it's, gee, it's really hard to define necessary, but I can tell you this, preferable isn't necessary. Yes. The Seventh Circuit in Bronk v. Nation, which is cited by the Western District in the McKibbis case, actually, because I know they make a deal about this, you know, flipping the logic and whatever, the actual quote from the Seventh Circuit is, the concept of necessity requires at a minimum the showing that the desired accommodation will affirmatively enhance a disabled plaintiff's quality of life by ameliorating the effects of the disability. Is that the best you have? That's the best I have. Well, that seems to be a remarkable sentence that deviates far field from my understanding of what the word necessity means. Necessity isn't about improving one's life, increasing the enjoyment of one's life. It's about what you need. And what people want, as any of us who have raised children know, what people want and what they need are two very different things. Well, I think if you combine that with the discussion in the Latin liberal case, that basically says necessity is basically a causative nexus. Right? So it has to be something that's related to, you know, what you're asking for has to be related to the disability that you have that you're trying to ameliorate. But I would go a little bit further, and I would say that the court need not be overly concerned with how broad necessity can be because there's another prong in that burden-shifting analysis. So even if necessity is by itself very, very broad, there's another element in these claims of reasonableness. And so I would say that that's a counteracting force. I understand that, and I think that's a good argument. But why in the first instance should we say that maybe necessary is broad? I don't understand why we should say it's broad, nor do I understand that we should construe it narrowly. We should construe it in its ordinary and appropriate manner. And the ordinary meaning is substantially higher than preferable. Ordinarily, something is not necessary if it's merely desirable. Ordinarily, it's not necessary if it's merely preferable. Necessary means you have to have it. You can't flourish without it. And I see a woman who could use a valet parking option but prefers to park in front of the building for this coveted parking spot she waited years for. Well, how is that necessary? Because I think we have to also be careful about what we're defining as the thing that is required. So ready access to the water seems to be— I think they're conceding that ready access to the water is the necessary thing. And really the question is, okay, how do we get there? And if there's four choices or five choices— now, I know that you're not wild about the joint statement, but our argument is if there's five choices, at least in terms of necessity and, frankly, in terms of reasonableness, we get to pick, and then that's what the joint statement says. But doesn't the doctor's letter— excuse me— the doctor's letter that says the walk is necessary, the lobby is preferable, doesn't that open up the fact that we need to pick and that you are bound by what you present in your complaint, including the letters you attach? No. I think what it means is that it goes to the question of reasonableness. So I think we follow the bird-shaking framework of a lab moral, and we say, okay, we've pled— and, frankly, I don't want to forget this point. The last letter that is— Exhibit 12 of the amendment complaint, that is the date December 12, 2016. The doctor specifically says, obviously the walkers who are sitting unattended does not in and of itself ameliorate the support challenge condition. Rather, the amelioration comes by her only to independently access these devices without waiting for them to be brought to her. So I would submit, in terms of mechanics, whether we've actually alleged necessity, given the Seventh Service definition, I think the plain language of the doctor brings us within that. So I think it's fair to say that we've not alleged necessity. That very line seems to embrace the valet parking solution, independent access without waiting for them to be brought to her. Well, what it does is it raises the question of alternatives, which I, again, submit is impermissible to look at. And I want to just make one final point on June. The necessity was that young woman's need to have some sort of, you know, shower, all that kind of stuff. But it shouldn't be forgotten that in June, the Homeowners Safety Association, just like in Philadelphia here, said, well, we don't dispute that you need all those things, but we think you should park it in an off-site lot. I think that's fair telling. I'm still struggling, Mr. Lurie, with the notion that alternatives are not to be considered, because it strikes me as backwards. If we're trying to determine what is legally necessary, aren't the alternatives supremely relevant? Let me give you another hypothetical. If somebody needs iron, I don't know, if you have an iron deficiency, you need more iron than the typical person in your diet, right? The person could sue and say, you know, the facility I'm living at, they're not giving me enough, my diet's not getting me enough iron, and it's making me sick, right? So I want you to accommodate my need for more iron by giving me, I don't know, prime rib. Does that have iron? Does that have iron? Yeah. Calf's liver has iron. That's the one you want. All right, thank you. I want calf's liver to make sure I get my iron. The facility says, gee, I think that's pretty expensive. We're going to give you iron supplements with your meal. In order to determine whether the calf's liver meal is necessary under the law, is it not supremely relevant to examine whether the facility's proffer of the supplements or other foods that are iron-rich foods, perhaps even more rich in iron than calf's liver and cheaper, make the calf's liver not necessary? Actually, no, not under the framework. Okay, why? Here's why. Because you would pass necessity with that argument, the plaintiff would pass necessity, but then the defendant, under the burden-shifting framework, would allow it. Well, we're trying to determine necessity. I don't want to concede that we're passing necessity. I'm trying to determine necessity. And I'm saying that actually would be irrelevant to necessity. It would come in later on the reasonableness. So the calf's liver meal, if it's, you know... The calf's liver meal is necessary because the plaintiff said calf's liver has a lot of iron. End of discussion. Your hypo would pass muster of necessity. It might not pass muster under reasonableness because the defendant, what seems backward about that, is necessity is a stronger word than reasonable. You're implying that necessity is a much more open test than reasonable, and that is the exact opposite of the way that a native speaker of the English language underpins those two words. I don't disagree with you, Your Honor, but on your lack of moral, I have to show necessity, then it goes to them to show unreasonableness. You know, that's the... At the end of the day, you're saying when a complaint says, thus and such is necessary, that's the end of the matter, to get to the burden of shifting. I mean, I think... And for a motion of summary judgment, you've said that issue has to go to trial. No. Because for summary judgment, I have to show evidence. I have to adduce sufficient evidence on summary judgment. These letters would suffice for summary judgment, you're saying, as well. On these four letters, we would have to take it to trial because it's medically preferable for her. I don't know if I... I mean, frankly, if I were in summary judgment, I would beef it up. With what? I could get a fuller opinion. I could get more medical evidence. Yeah, but what about facts? What about... You want to get another medical opinion that says... it's necessary for her not to take the valet parking option? That's what your medical opinion would say? Well, I think the medical opinion already says that she should be getting an accommodation that allows her to maintain functional independence. And the valet parking option says that. I... No, I don't think that would. I don't think that would, because then again, you're still waiting on the availability of others to help you do something that you can do by yourself. Even in valet parking. My read of that letter was she was allowed... she could park it herself there, and the walker would be there, and she could independently get it there. Now, maybe I'm completely misremembering the document. Are you talking about the... You're talking about the... Their letter. They were going to give her a spot in a place where she could leave her walker so she could get it as soon as she got out. Well, I don't think we have to credit the facts that the other side says in the letter, because I'm not alleging those things to be true. I thought it was attached to your... It was the letter that was attached to your complaint. Even if it was... I don't recall if it was, but even if it was, that's not offered for the truth of the accuracy of the letter. Then what's it attached for? I think it's to show us the fact of the timeline. To show what was said to whom and when. Well, I think you should, in the future then, not include relevant facts that undercut the legal position you're taking in your complaint. I don't think it undercut my legal position, Your Honor. Because our central position is they don't get to decide what the alternatives are so long as what we're asking for is necessary and reasonable. Okay. Thank you, Mr. Lloyd. Thank you to both counsel. It's a novel and interesting case. We'll take the matter under advisement.